UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Roger Brown, | ) | Civil Action No. 4:05-414-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | REPORT AND |
| | ) | RECOMMENDATION |
| GE Media, Inc. d/b/a WFXB Fox 43, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff brings this action alleging wrongful termination of his employment in violation of

Title VII, 42 U.S.C. §2000e, *et seq.*, as well as state law claims.  Defendant filed its motion for

summary judgment (Document # 16) on December 21, 2005, to which plaintiff filed a memorandum

in opposition.  Discovery is closed and the matter is ripe for disposition.[1]  No hearing was held in

this matter pursuant to Local Rule 7.08, D.S.C.

### *Facts*

Brown, an African-American, began his employment with defendant in January 2003 as a

part-time master control operator (MCO) at defendant's television station in Myrtle Beach, earning

$6.50 per hour.  Brown worked on Saturday and Sunday mornings and totaled approximately twenty

hours per week.  During this time, Brown also worked at the Hilton Myrtle Beach Resort as a full-

time guest services agent.

Melissa Spevak, a white female, also worked for defendant, as a full-time MCO.  She worked

---

[1]  All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because
this is a dispositive motion, the report and recommendation is entered for review by the district
judge.

-1-

between thirty-five to forty hours per week, from 4:00 p.m. until 11:00 p.m. on Tuesdays, 7:00 p.m. until 11:00 p.m. on Wednesdays and Thursdays, and 3:00 p.m. until "sign-off" on Fridays and Saturdays.  Spevak resigned in April 2003.  Following her resignation, David Milligan, the operations manager and plaintiff's immediate supervisor, offered plaintiff the position vacated by Spevak.  Brown was promoted to full-time MCO in April 2003.

As a full-time MCO, Brown began working Spevak's schedule as set forth above.  According to plaintiff, "until sign-off" meant until 2:00 a.m. to 4:00 a.m.  According to this schedule, plaintiff did not work on Sundays and Mondays.

Brown continued his employment with the Hilton on a part-time basis throughout his remaining tenure with defendant.  According to Brown, after he began working full-time with defendant, he worked at the Hilton from 7:00 a.m. to 2:00 p.m., approximately twenty hours per week, on various days Monday through Thursday.

Around September 2003, Brown submitted a written request to alter his schedule with defendant by reducing his hours on Friday and Saturday nights.  The report was distributed to the other MCOs, David Milligan and Dave Carfolite,  the General Manager of the station.  Plaintiff's schedule was reduced to allow him to finish at 2:00 a.m. on Friday and Saturday nights.  (Plaint. Dep. at 65-66).

In January or February 2004, plaintiff asked Mr. Milligan if he could again adjust his schedule.  Plaintiff testified that the primary reason for the request was because of "strenuous work that was going along was causing problems with my eyes and stuff, you know, sitting there staring at this screen there for a long, lengthy amount of time, causing problems with my eyes in the nighttime.  That's why I asked for the reduction."  (Plaint. Dep. at 69).  He felt it was a waste of gas

to drive to work on Tuesdays for a four hour shift, and requested that instead of working 7:00 p.m. to 11:00 p.m. on Tuesdays and 3:00 p.m. to sign-off on Fridays, that he work 3:00 p.m. to 11:00 p.m. on Tuesdays and 7:00 p.m. until sign-off on Fridays.  Mr. Milligan told him the next day he had worked it out.  (Plaint. Dep. at 67).  Plaintiff came in that following Tuesday at 3:00 p.m. and worked until 11:00 p.m.  However, on that following Friday, he was on the way to work at approximately 6:30 p.m. and received a call from  Eric Paralta, another MCO, asking him where he was.  Paralta commented that he was suppose to be there at 6:00 p.m.  Plaintiff explained that his schedule had been changed to be there at 7:00 p.m. on Fridays.  Thereafter, however, his schedule was from 6:00 p.m. until 2:00 a.m. on Fridays.  Plaintiff was upset about this change because the schedule change ended up adding an hour to his work schedule and he wanted to arrive later on Fridays. (Plaint. Dep. at 68).  Plaintiff's letter to Mr. Milligan and Steve Albright, a fellow MCO, dated February 3, 2004, reads as follows:

> I am writing this letter as a written request for something that I have already asked for verbally.   As a refresher I would like to state what it is that I'm asking for.  I am asking for a schedule change from coming in a 7pm on Tuesdays to coming in at 7pm on Fridays.  Also I request a change from coming in at 3 pm on Fridays to coming in at 3 pm on Tuesdays.  Basically I want to switch what I do on Fridays to what I do on Tuesdays, and vice versa.
> There are 48 hours between 3 pm on Friday and 3 pm on Sunday.  I think that it is really unfair that two people have to split 40 of those 48 hours working so that others can have those days off.  Friday  is the day where a lot of the work is dropped off on the MCO on duty from others who are on their way out the door for the weekend.  For example the traffic department drops off all of the spots that need to be downloaded for the entire weekend as well as the following Monday.  On top of that there are also the house party spots that are also dropped off.  This is a lot of work that falls on one or two people especially at the end of the week.  I understand that everyone wants the weekend off, but you have to be aware of the sacrifices that others have to make just so you can have this luxury.  There is a lot of work and hours falling on two people while others are home having their cake and eating it

-3-

too.

This act of selfishness has been going on for long enough and it cannot be allowed to continue. I have asked for a change in this on several occasions during 2003. I was told that there was no way to work it out. Just recently when I asked again there were unsuccessful attempts to get me to believe that there was only one option in making these changes happen. These attempts were unsuccessful for the following three reasons:

1. I Believe that if we focus on what we *can* do as opposed to what we're *willing* to do, we will be able to come up with more options.

2. There is little to no evidence to support the notion of there only being one option that can be used to honor this request.

3. I do not accept, nor have I ever accepted the notion that there is so little that we can do; simply because there *are* more options.

I am not one to complain, and I don't make threats, demands, or trouble for others. However, I do ask and encourage people to do what's right. So in the interest of fairness we need to come up with other options that will make this work. I am bringing my case to you and asking you to do the right thing. *It is important for you to know and fully understand that this is not a request that will just vaporize simply because the one option that was presented did not work.* Please keep this in mind, and thank you very much for your time.

Plaintiff sent a letter dated February 7, 2004, to Mr. Milligan, Mr. Albright, and Paralta,

which reads as follows:

I am writing this letter as a follow up to my last letter of request. We have quickly solved the problem of my hours on Tuesdays, however we still have not reached resolution of my Friday request. Finally I have received some feedback on the reason(s) that is making this request such a difficult thing to resolve. I have been informed that we are understaffed, I've learned that some of my colleague's are taking on an overwhelming amount of work that I didn't know that they were taking on, and that there were budget issues in hiring new people. I understand that because of these reasons it would be difficult to honor my request. The fact that my colleagues have this extra work really looks bad on me. All of this time I am sitting around doing nothing, I never took the time out to ask what can I do to help make my colleague's jobs easier.

Since my 7pm Friday start request is still on the table unresolved, I would like to offer my services and time to my colleagues to help make it easier to honor my request. I've always been told that, "if nothing is ever asked of you, then nothing is ever expected of you." So when I hear that the people around me are shouldering a lot of work and yet nobody has come to me asking for any help what does that say to or about me?

-4-

<u>Have you ever said any of these things to yourself?</u>
"I have an extra 30 second house party spot to make, and I have no idea what to say to fill the time I'm going to see if any of the MCOs may have an idea."
"I'm about to go film something that I need to create this commercial/promo. I wonder if any of the other MCOs that don't know how to create a commercial/promo would be interested in watching and learning how to do it."
"I don't have time to look over the log for errors, but I trust the MCO on duty enough to do it right.  Let me see if he/she is interested."
These are only thoughts of a person who is interested in teamwork instead of individuality.  Even Michael Jordan had to pass the ball sometimes.  Have you ever thought that maybe the MCO on duty would want to learn these new things?  Have you ever thought that the MCO would like to help out a little more from time to time?  Well I am here to now offer my services.  I know that there are MCOs that have been here longer than I have so, I am offering to help by picking up *whatever* slack is left behind during the learning process by the MCO that you decide to show new things.  I know that one day I will get my chance to learn these things, but it would not be fair to learn it at the same time as someone who has been here longer.  If no other MCO is willing to learn and help out then I am offering my assistance.  I do not even have to be clocked the learning process of these new duties.  This is what I'm willing to do to see this Friday request happen.  Come talk to me and let me know what you want me to do.

Plaintiff sent an email to Mr. Carfolite on April 8, 2004, which reads as follows:

Hey Dave this is Roger from Master Control:
I am writing to tell you about some serious concerns that I have about my schedule.  I am working 3pm to 11pm on Tuesday through Thursday.  On Fridays, 6pm to 2am and on Saturdays 4pm to 2am.  The concern with this schedule is that all of these hours come during the afternoon to late night hours.  I have made my concerns public verbally and in writing to several members of the production/MCO staff.  It seems that each time I do this I either get ignored completely, or I get something less than what I ask for. Now I am coming to you asking you to see if you can work out a better schedule for me so that I can have some afternoons off here and there. If you could help me out in this situation it would be deeply appreciated.

Mr. Carfolite replied to his email telling plaintiff that Mr. Milligan would handle the request.

(Plaint. Dep. at 79).   Plaintiff sent a follow-up email to Mr. Carfolite which reads as follows:

-5-

> Dave it's Roger again,
> I am writing again because I don't feel that my first email expressed my true frustrations about my schedule. I feel that I have been taken advantage of for the last year with the way my schedule was set up. It frustrated me even more when I came to people in the past about this and they treated me like I was some sort of a joke. I am a professional, and when I came to people in the past I should have been treated with a little bit more consideration and respect. Instead, in the past when this concern was brought up all deliberations took place without me being present. This usually resulted in me getting nothing or less than I asked for with little or no explanation. Working this schedule week after week is taking it's toll on me physically and socially. I am sick of it, and I'm sick of listening to my friends and family complain about it. Sorry for throwing this on you out of the blue, but thank you for listening to me vent. So if there is anything you can do to help me please let me know.

Carfolite met with plaintiff on April 12, 2004, to discuss his concerns. During this discussion, plaintiff presented Carfolite with two proposed schedules: full-time 3:00 p.m. to 11:00 p.m. Sundays through Thursdays or, alternatively, part-time 3:00 p.m. to 11:00 p.m. Wednesdays and Thursdays. Both proposed schedules eliminated any work on Fridays or Saturdays. Carfolite told plaintiff he would take the proposed schedules to Milligan for review. Also, according to plaintiff, he requested time off on Friday, April 16, and Saturday, April 17. (Plaint. Dep. at 80). According to Carfolite, plaintiff only requested time off for Friday, April 16. (Carfolite Dep. at 23, 30). Plaintiff testified that Carfolite told him he could take off both days; however, Carfolite testified that he told plaintiff he would discuss it with Milligan. (Plaint. Dep. at 80, 94-95; Carfolite Dep. at 23, 30).

Carfolite sent an email to plaintiff dated April 12, 2004, which reads as follows:

> Roger, after we talked I went back and explained to Dave that you felt you have not been heard. He told me that recently (within the past month) that the schedule had been changed to meet your needs, but he would work with you to see what can be resolved. I specifically showed Dave that you could not work this coming Friday, which I expressed to him had to do with

demands of your other job.  That you were willing to work nights until 11PM, or on a part time basis.  He will research what needs to be done, and get back with you.

Thanks for coming in and talking.  Sometimes when everyone is equally unhappy, the best solution has been met.  I appreciate you coming in and "venting" and look forward to you and Dave working out this schedule issue.  However, Dave does have demands from several directions.  I know he will do his best as well.

Milligan and plaintiff met the following day on April 13, 2004.  At this meeting, Milligan relayed that he had hired a new MCO in an attempt to satisfy plaintiff's third request for a schedule change.  Milligan also told plaintiff he would be working Friday, April 16, and that Mr. Paralta would be helping him out.  Brown responded to Milligan that "Mr. Carfolite said I could have those days off."  Plaintiff testified that Milligan told him that he would have to talk with Albright about covering his shift.  At no time did plaintiff receive permission from Milligan to take off Friday, April 16, or Saturday, April 17.  (Plaint. Dep. at 95).  In fact, plaintiff testified that he never asked Mr. Milligan for the time off.  (Plaint. Dep. at 95).

Plaintiff met with Mr. Milligan again either Wednesday or Thursday and, again, Mr. Milligan advised plaintiff that he needed to talk to Mr. Albright about covering for him if he was going to take the time off.  (Plaint. Dep. at 97).   Plaintiff testified that he spoke to Mr. Albright who told plaintiff he would find a way to work it out.  (Plaint. Dep. at 97).

Milligan testified that he told plaintiff on Thursday, April 14, that nobody was willing to work his Friday and Saturday shifts and that he would have to work his shifts as scheduled.  (Milligan Dep. at 41).  Also, Albright testified that he told plaintiff on Thursday that he could not work for him on Friday or Saturday.  (Albright Dep. at 13-14).  Additionally, Albright called

Milligan at home late on Thursday and told him about his conversation with plaintiff[2] and told him

he did not believe plaintiff would show up for work on Friday.  Plaintiff did not work his scheduled

shift on Friday or Saturday.[3]  (Albright Dep. at 14-15; Milligan Dep. at 42).

Mr. Milligan called plaintiff on Monday, April 19, 2004, and informed him that his

employment was terminated because he failed to show up for work on Friday and Saturday, and he

did not have anyone covering his shifts.  (Plaint. Dep. at 106).  Milligan testified that he told plaintiff

he would consider it a resignation so his record would not indicate that he was terminated.  (Milligan

Dep. at 50).

Plaintiff asserts that the decision to terminate his employment was based on race.  Plaintiff

admits that he could not recall any time that race was discussed while employed with defendant.

(Plaint. Dep. at 42-43).  However, he presents circumstances that he believes show racial animus.

He argues that defendant believed Mr. Albright, a white employee,  rather than plaintiff in making

the decision to terminate him.  In other words, defendant believed Albright did not agree to cover

for plaintiff.  He also argues that Mr. Albright left work early on occasions without recourse and

plaintiff does not believe he had the same privilege.  He also states that one time in 2003, Mr.

Albright was not disciplined after he asked plaintiff to cover a shift for him, which plaintiff did, but

did not get prior approval from Mr. Milligan to take leave.

Defendant's employee handbook contains a provision requiring employees to advise their

_____

[2] Albright testified that he told plaintiff he could not work on Friday, but would attempt
to work something out for Saturday night.  He testified that plaintiff said, "no."  (Albright Dep. at
14).

[3] Apparently, Paralta worked Friday and the Saturday shift was split between Paralta and
Albright.  (Milligan Dep. at 43).

department head of vacation requests in writing as soon as reasonably possible.  The provision also

states that a form is available upon request.  It further provides that all vacation requests must be

approved by the employee's manager and the General Manager at least three weeks in advance.  The

handbook also provides that unauthorized absence from work is a prohibited practice that may result

in immediate termination.

Milligan also testified that it was normal practice and procedure of defendant to require a

vacation request form and approval of an employee's immediate supervisor.  (Milligan Dep. at 10-

11).  Plaintiff testified that the normal procedure for requesting vacation leave was to fill out a form

and submit it to Mr. Milligan for approval.  (Plaint. Dep. at 53-54).  He testified that the person

taking time off was responsible for finding someone to fill in for them during the leave time.  (Plaint.

Dep. at 98).  Plaintiff used a vacation request form when requesting leave prior to April 16, 2004.

(Milligan Dep. at 11).

### *Standard of Review*

Defendants filed their motion for summary judgment pursuant to Rule 56, FRCP.  The

moving party bears the burden of showing that summary judgment is proper.  Summary judgment

is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as

a matter of law.  Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary

judgment is proper if the non-moving party fails to establish an essential element of any cause of

action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the

moving party has brought into question whether there is a genuine issue for trial on a material

element of the non-moving party's claims, the non-moving party bears the burden of coming forward

with specific facts which show a genuine issue for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical

Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come

forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably

find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences

to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy

v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on

beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.

Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet

"the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v.

Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as

provided in this rule, an adverse party may not rest upon the mere allegations or denials of the

adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in

this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celetex

Corp. v. Catrett, 477 U.S. 317, 324 (1986)(Rule 56(e) permits a proper summary judgment motion

to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere

pleadings themselves").  To raise a genuine issue of material fact, a party may not rest upon the mere

allegations or denials of his pleadings.  Rather, the party must present evidence supporting his or her

position through "depositions, answers to interrogatories, and admissions on file, together with ...

affidavits, if any."  Celetex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  See also Cray

Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v.

Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

*Discussion*

Plaintiff claims his employment termination was based on race in violation of Title VII and

42 U.S.C. §1981.

The parties agree that this case should be analyzed using the method established in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). [4]   Under the McDonnell Douglas[5]

analysis, plaintiff has the initial burden of demonstrating a *prima facie* case of discrimination.  To

establish a *prima facie* case, plaintiff must show (1) he is a member of a protected class; (2) he was

qualified for his job and he was performing his job at a level that met his employer's reasonable

expectations; (3) he suffered an adverse employment action; and (4) the position remained open or

was filled by similarly qualified applicants outside the protected class.  Hill v. Lockheed Martin

Logistics Mgmt, 354 F.3d 277, 285 (4th Cir. 2004).  Under some circumstances, the fourth element

can be established by presenting evidence raising an inference of discrimination.  See Miles v. Dell,

Inc., 429 F.3d 480, 486-87 (4th Cir. 2005); EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 n.2

(4th Cir. 2001)(citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981)).  In a

disparate discipline case, the fourth prong may be satisfied by establishing that other employees who

are not members of the protected class were retained under apparently similar circumstances.  Bryant

---

[4]  The principles applicable to §1981 are the same as those for determining liability under
Title VII.  Jordan v. Alternative Resources Corp., 447 F.3d 324, 334 (4th Cir. 2006)(citing Honor
v. Booz-Allen & Hamilton, Inc., 383 F.3d 180 (4th Cir. 2004)); Gairola v. Commonwealth of Va.
Dept. of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir.1985).

[5]  The McDonnell Douglas analysis was refined in St. Mary's Honor Ctr. v. Hicks, 509
U.S. 502 (1993), and Reeves v. Sanderson Plumbing Products, Inc., – U.S. –, 120 S.Ct. 2097,
147 L.Ed.2d 105 (2000).

v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 133 (4ᵗʰ Cir. 2002).[6]

Defendant argues that plaintiff fails the *prima facie* case because he fails to show he was performing at a level that met defendant's reasonable expectations.

Defendant presents the policy contained in the employee handbook setting forth the normal procedure for taking vacation leave, as well as the normal procedure of using a vacation request form. It is clear that the normal practice involves use of a vacation request form. Plaintiff presents copies of several vacation request forms previously submitted by plaintiff. It does not appear that defendant routinely adhered to a three week notice requirement. Plaintiff testified that the General Manager, Mr. Carfolite, approved his request for leave. Clearly, an issue of fact exists as to whether or not plaintiff had approval from Mr. Carfolite, at least as to Friday, April 16. The other hurdle involves whether or not Mr. Milligan required plaintiff to fill out a vacation request form and whether or not plaintiff made arrangements for another MCO to cover for him. The evidence clearly shows that the normal practice was for employees to fill out a vacation request form. Also, it is clear that plaintiff did not do so on this occasion as he had done in the past. In the light most favorable to the plaintiff, this situation was unusual because it involved participation by the General Manager, Mr. Carfolite. The record does contain the testimony of Mr. Milligan that he directed plaintiff to fill out a request form. Plaintiff has not directed the court to any testimony explicitly contesting this testimony. However, under the circumstances, an issue of fact exists as to whether failure to do so was sufficiently severe in and of itself to amount to deficient performance contemplated by Title

---

[6] The Fourth Circuit recently discussed the necessity of the standard fourth element. Miles v. Dell, Inc., 429 F.3d 480, 485-90 (4ᵗʰ Cir. 2005). Although *Bryant* was not discussed in *Miles*, *Bryant* remains valid law.  See Powell v. Bank of America, N.A., 2005 WL 2335463, n. 4 (W.D.N.C. 2005)(discussing state of law prior to *Miles*).

VII.   However, this does not end our inquiry.  There is an issue of fact created by the conflicting

testimony of plaintiff and Mr. Albright regarding Mr. Albright covering for plaintiff's scheduled

shifts.  Considering the conflict in testimony about the occurrence of a conversation on Thursday

between plaintiff and Mr. Milligan and the conflict in testimony between plaintiff and Albright and

the factual issue of whether Mr. Carfolite at least partially approved his leave request, plaintiff

presents sufficient evidence, not an onerous task, to meet this second prong of the *prima facie* case,

although it is a weak showing.

Defendant does not address the fourth prong of the *prima facie.*  Plaintiff asserts that other

employees who are not members of the protected class were retained under apparently similar

circumstances.  Based on the record, it is clear that plaintiff fails this burden.  Plaintiff alleges that

there was one white employee, Albright, who was similarly situated, who took time off without

getting approval from Milligan.   While it does not appear that plaintiff is competent to testify to

what Albright did or did not do, it is assumed that Albright did take leave on one occasion in 2003

without approval from Milligan.  However, there is no dispute that Albright made arrangements for

plaintiff to cover his shift and plaintiff did, in fact, work in his stead.  Plaintiff must establish that

"other employees" were similarly situated in all relevant respects; that they "dealt with the same

supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such

mitigating circumstances that would distinguish their conduct or the employer's treatment of them

for it."  Mitchell v. Toledo Hosp., 964 F2d 577, 583 (6th Cir. 1992)(citing Mazzella v. RCA Global

Communications, Inc., 642 F.Supp. 1531 (S.D.N.Y.1986), aff'd, 814 F.2d 653 (2d Cir.1987); Lanear

v. Safeway Grocery, 843 F.2d 298 (8th Cir.1988) (plaintiff must prove that he and the white

employee were similarly situated in all respects and that the other employee's acts were of

comparable seriousness to his own); Cox v. Electronic Data Systems Corp., 751 F.Supp. 680

(E.D.Mich.1990)); Radue v. Kimberly-Clark Corp., 219 F3d 612,617-18 (7th Cir. 2000)(holding that

plaintiff must demonstrate that the same supervisor was involved in comparable situations to

demonstrate disparate treatment of similarly situated employees); Stanback v. Best Diversified

Products, Inc., 180 F.3d 903,910 (8th Cir. 1999)(same);  Shumway v. United Parcel Serv., Inc., 188

F.3d 60,64(2d Cir. 1997)(employees were not similarly situated because they were not supervised

by the same person).  There is no published Fourth Circuit case on point; however, the Fourth Circuit

has cited with approval the precedent in this string cite in the unpublished cases of Flateau v. South

Carolina Commission for the Blind, 2002 WL 31553805 (4th Cir. 2002); Heyward v. Monroe, 1998

WL 841494 (4th Cir. 1998); Edwards v. Newport News Shipbuilding and Dry Dock Co., 1998 WL

841567 (4th Cir. 1998).  Factors exist that distinguish Albright from plaintiff.  He had more

responsibility and had been employed with defendant for a much longer time.  Most important,

however, Albright had someone, plaintiff, cover for his shift.  Accordingly, plaintiff fails to present

a *prima facie* case.

Assuming, *arguendo*, a *prima facie* case, the burden shifts to the defendant to produce a

legitimate, nondiscriminatory reason for the termination.  Texas Dept. of Community Affairs v.

Burdine, 450 U.S. 248, 254 ((1981).  This is merely a burden of production, not of persuasion.  St.

Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).   Once the defendant has met its burden

of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is

"discrimination *vel non*."   Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143

(2000)(citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). In other words,

the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the

legitimate reason produced by the defendant is not its true reasons, but were pretext for discrimination.  Reeves, 530 U.S. at 143.  During all of the burden shifting scheme set forth in McDonald Douglas, the ultimate burden of proving that defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

Defendant produces its non-discriminatory, legitimate reason for the termination of plaintiff's employment:  plaintiff's failure to follow procedure and failure to show up for his scheduled shift. Plaintiff does not dispute that he failed to follow normal procedure or that he failed to show up. However, he argues that the normal procedure was not applicable because Carfolite approved his request for leave.  As discussed above, an issue of fact exists as to this issue.  Plaintiff argues that he shows pretext by showing inconsistency in Milligan's testimony.  Clearly Milligan testified that he told plaintiff he must fill out a vacation form in order to take the time off. While, in plaintiff's brief,  plaintiff's counsel states that plaintiff did not indicate in his deposition that Milligan told him he was required to fill out a vacation request form, that is not the same as testifying that Mr. Milligan did not tell him to do so.[7]

Plaintiff also asserts that Milligan testified that plaintiff never asked for permission from Milligan and Milligan never gave permission to plaintiff to take off on April 16th and 17th.  Plaintiff asserts that this is at odds with Milligan's testimony that he informed plaintiff on Thursday that no one was willing to work plaintiff's scheduled shifts.  While this testimony may be in conflict from that provided by plaintiff, it does not conflict with his own testimony.  Milligan testified that he told plaintiff he needed to make arrangements for someone to cover for him.  When plaintiff was unable to do so, he told plaintiff he would have to work.

---

[7] Plaintiff's counsel does not cite to the record for support.

-15-

Plaintiff also argues that Milligan's testimony that he told plaintiff he needed to fill out a vacation request form is in conflict with his testimony that plaintiff never asked for or received permission from Milligan to take the days off. Again, this is not conflicting testimony. When plaintiff told Milligan Carfolite approved his vacation request, Milligan told plaintiff to fill out a request form. He did not tell him he could not take vacation.

Plaintiff also points out that the testimony of Albright and plaintiff conflicts as to whether or not Albright agreed to cover for plaintiff on April 16th and 17th.

Plaintiff also argues that Albright was allowed to take a day off in 2003 without prior approval and use of a vacation request form. Plaintiff asserts that this shows defendant did not always abide by its own policies. However, the clear difference is someone, plaintiff, did work Albright's shift in his absence. Also, defendant presents uncontradicted evidence that Albright had been working with defendant longer and had more responsibility and duties.

There is not doubt that plaintiff's testimony differs dramatically from that of Carfolite, Milligan and Albright. The one piece of documentary evidence is the email from Carfolite to plaintiff on April 12th that references plaintiff's request for leave on Friday. However, it does not mention Saturday. What is not in conflict is that Milligan told plaintiff to find someone to cover for him. Plaintiff testifies that he believed Albright was going to cover for him. Albright testifies otherwise. As argued by plaintiff, defendant believed Albright and not plaintiff. It is not necessary to decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."[8]   Hawkins v. Pepsico, 203 F.3d 274, 279 (4thCir.

---

[8] "Proof that the employer's proffered reasons in unpersuasive, or even obviously contrived, . . . does not necessarily establish that [plaintiff's] proffered reason (race discrimination) . . . is correct." Reeves, 530 U.S. at 146-47. "It is not enough to disbelieve the

-16-

2000)(quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir. 1998); DeJarnette,

133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the

prudence of employment decisions made by firms charged with employment discrimination ...."

(internal quotation marks omitted)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir.1995)

("We have recognized the importance of giving an employer the latitude and autonomy to make

business decisions, including workplace reorganization, as long as the employer does not violate the

ADEA."); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not

a vehicle for substituting the judgment of a court for that of the employer").  It is the perception of

the employer that is critical.  Hawkins, 203 F.3d at 280.  Even a reasoned decision based on incorrect

facts is not evidence of pretext.  Pollard v. Rea Magnet Wire Co., 824 F.3d 557, 559 (7th Cir. 1987),

cert. denied, 484 U.S. 977 (1987).

Also, when the same person fires an individual that hired that same individual in a short

period of time, the strong presumption against discriminatory intent arises under the law.  Proud v.

Stone, 945 F.2d 796 (4th Cir. 1991).  There is no dispute that Milligan hired plaintiff, provided some

schedule accommodations for plaintiff, and terminated his employment.  This all occurred between

January 2003 and April 2004.

"The ultimate question in every employment discrimination case involving a claim of

disparate treatment is whether the plaintiff was the victim of intentional discrimination."  Hill, 354

F.3d at 286.  Plaintiff must produce sufficient evidence upon which a reasonable juror could find that

the protected trait actually motivated the employer's decision.  Id.  Plaintiff has failed to meet his

---

[employer]."  Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004).  Plaintiff must show a
reasonable jury could "believe [her] explanation of intentional race discrimination."  Id.

burden.

Defendant removed this case to this court after plaintiff filed the action in state court.  It is recommended that plaintiff's remaining state law claims be remanded to the Court of Common Pleas, Horry County, South Carolina.

For the foregoing reasons, it is recommended that defendant's motion for summary judgement be granted as to plaintiff's claims under Title VII and 42 U.S.C. §1981, and the remaining state law claims be remanded to the Court of Common Pleas, Horry County, South Carolina.


August 23, 2006                                          s/Thomas E. Rogers, III
Florence, South Carolina                          Thomas E. Rogers, III
                                                                United States Magistrate Judge


**The parties' attention is directed to the important notice contained on the following page(s).**

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. **28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).** The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. **Fed. R. Civ. P. 6.** A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, **423 U.S. 261, 270-271 (1976); and** Estrada v. Witkowski, **816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).**

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, **782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and** Oliverson v. West Valley City, **875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995).** Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, **727 F.2d 91, 94 & n. 4 (4th Cir.),** *cert. denied*, Schronce v. United States, **467 U.S. 1208 (1984); and** Wright v. Collins, **766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).** Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, **932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991).** *See also* Praylow v. Martin, **761 F.2d 179, 180 n. 1 (4th Cir.)**(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, **474 U.S. 1009 (1985).** In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, **843 F.2d 1015, 1017-1019 (7th Cir. 1988),** where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, **886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)**("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, **749 F.2d 5, 7 n. 1 (3rd Cir. 1984)**("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, **892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989).** Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**
